# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-1889-B |
| | § | |
| ELIZABETH ANDERSON, an individual | § | |
| d/b/a "ppluniversity-us" on | § | |
| www.ebay.com | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Mary Kay Inc.'s (Mary Kay) Motion for Default Judgment. Doc.

16. For the reasons that follow, the Court **GRANTS** Plaintiff's motion.

## I.

## BACKGROUND

On July 17, 2017, Mary Kay filed suit, alleging that Defendant Elizabeth Anderson[1] was

selling Mary Kay products on eBay "without authorization and in violation of Mary Kay's intellectual

property rights under federal and Texas law." Doc. 1, Compl., ¶ 32. Mary Kay claims that it sells its

products only through authorized consultants, which allows Mary Kay to enforce quality controls,

such as requiring consultants to meet one-on-one with customers, and prohibiting consultants from

selling expired products or selling products on the Internet. *Id.* ¶¶ 9, 17–18. "Mary Kay also provides

---

[1] Mary Kay also filed suit against "John Does 1-10" but voluntarily dismissed those defendants on December 20, 2017. Doc. 13, Stipulation of Dismissal. Thus, Elizabeth Anderson is the only defendant in this case.

consumers who purchase Mary Kay products through authorized channels of distribution a complete money-back satisfaction guarantee." *Id.* ¶ 19. According to Mary Kay, Anderson bought Mary Kay products from a Mary Kay consultant and resold them on the Internet. *Id.* ¶ 33. Thus, because Anderson is not an authorized Mary Kay consultant, the products she sells do not come "with the same quality controls and consumer benefits as [authorized] Mary Kay products." *Id.* ¶ 35. Mary Kay claims that Anderson's actions constitute trademark infringement, false advertising, unfair competition, and trademark dilution under the Lanham Act; trademark dilution under Texas statutory law; and common-law trademark infringement, unfair competition, and tortious interference with contracts and business relations. *See generally* Doc. 1, Compl.

Summons was executed on Anderson on November 9, 2017, Doc. 10, but Anderson never answered the complaint or otherwise responded. On December 20, 2017, Mary Kay requested that the Clerk enter default against Anderson, Doc. 12, which the Clerk did the same day, Doc. 14. Mary Kay filed a motion for default judgment on February 12, 2018. Doc. 16. Thus, Mary Kay's motion is ripe for review.

## II.

## LEGAL STANDARD

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include:

[1] whether material issues of fact are at issue; [2] whether there has been substantial

prejudice; [3] whether the grounds for default are clearly established; [4]whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). In doing so, courts are to assume that due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, a "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine "what form of relief, if any, the [plaintiff] should receive." *1998 Freightliner*, 548 F. Supp. 2d at 384. Here, Mary Kay seeks only injunctive relief. Courts have authority under the Lanham Act to issue injunctions "'to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark office.'" *Mary Kay Inc v. Weber*, 661 F. Supp. 2d 632, 640 (N.D. Tex. 2009) ("Weber II") (quoting 15 U.S.C. § 1116(a)). And courts may issue such an injunction upon finding default judgment warranted. *Pathway Senior Living LLC v. Pathways Senior Living LLC,* No. 3:15-cv-02607-M, 2016 WL 1059536, at * 4 (N.D. Tex. Mar. 17, 2016); *Mary Kay Inc. v. Ayers*, 827 F.Supp. 2d 584, 595 (D. S.C. 2011).

# III.

## ANALYSIS

A.    *Whether An Entry of Default Judgment is Procedurally Warranted*

After applying the six *Lindsey* factors to Mary Kay's motion, the Court determines that default judgment is procedurally warranted. First, Anderson has not filed any responsive pleadings so there exists no material issues of fact. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, Anderson's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests."*Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011). Third, given that Anderson has had sufficient time to file either an answer to Mary Kay's  complaint or explain why she has not done so, the grounds for default are clearly established. *Cf. Elite v. KNR Grp.*, No. 99-41263, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to suggest Anderson's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Indeed, Mary Kay alleges that Anderson twice acknowledged Mary Kay's cease and desist letters and refused to stop selling Mary Kay products. Doc. 1, Compl., ¶¶ 23, 26–27. Fifth, Mary Kay seeks only the relief the law provides it, which "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. GreenTree Inv. Grp., Inc.*, No. 12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if it were challenged by Anderson. *Lindsey*, 161 F.3d at 893.

*B.*     *Whether There Is a Sufficient Basis in the Pleadings for Default Judmgent*

In light of the entry of default, Anderson is deemed to have admitted the allegations set forth in Mary Kay's complaint. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for Mary Kay's claims for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In conducting this analysis, the Fifth Circuit has looked to Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015*)*.

### 1.     Claims for Trademark Infringement and Unfair Competition

Because Mary Kay must plead the same set of facts to prevail on its claims for trademark infringement and unfair competition under the Lanham Act and Texas common law, the Court will jointly consider these claims. *Hawkins Pro–Cuts v. DJT Hair, Inc.*, No. CA 3-96-CV-1728-R, 1997 WL 446458, at *5 (N.D. Tex. July 25, 1997) ("Similar to the claim for trademark infringement, an essential element to establish unfair competition under Texas law is a likelihood of confusion between the product of the plaintiff and that of the defendant."); *Interstate Battery Sys. v. Wright*, 811 F. Supp. 237, 244 (N.D. Tex.1993) ("Ordinarily, the same set of facts enabling a plaintiff to recover under 15 U.S.C. Section 1114 will enable recovery under 15 U.S.C. Section 1125.").

To establish a claim for trademark infringement and unfair competition, a plaintiff must

demonstrate ownership of a legally protectable mark and a likelihood of confusion between the marks. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010). Proof of registration with the United States Patent and Trade Office (USPTO) is "prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services." *Id.* at 237. Generally, under the first-sale doctrine, resale of a product does not create a likelihood of confusion. *Weber II*, 661 F. Supp. 2d. at 642. But "[t]he first sale doctrine does not apply [] if the defendant is selling goods that materially differ from the goods the mark owner sells." *Id.* (internal quotation marks omitted). Whether a good is materially different generally relates to "some defect (or potential defect) in the product itself that the customer would not be readily able to detect." *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 591 (5th Cir. 1993). Expired goods may be materially different than those sold by the mark owner if the mark owner implements quality-control procedures to ensure its products are fresh. *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6–7 (2d Cir. 1996); *Weber II*, 661 F. Supp. 2d at 642–43.[2]

Mary Kay alleges that it has "registered numerous trademarks with the United States Patent and Trademark Office . . . including, but not limited to, U.S. Trademark Registration Nos. 817516, 1070841, 1545983, and 1842599." Doc. 1, Compl., ¶ 10. Thus, Mary Kay's well-pleaded facts

---

[2] *Weber II*, citing *Warner-Lambert*, holds that a plaintiff must also show that the sale volume of the defendant's materially different goods diminishes the value of the plaintiff's mark. *Weber II*, 661 F. Supp. 2d at 643. But *Warner-Lambert* states that a plaintiff need only make this showing if its quality-control procedures are less than "wholly effective." *Warner-Lambert*, 86 F.3d at 7. Mary Kay fails to allege Anderson's sale volume or whether its quality control measures are wholly effective at preventing the sale of expired products. But the Court finds that these omissions do not prevent Anderson from having "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555, and therefore does not bar Mary Kay from obtaining default judgment on its trademark infringement and unfair competition claims.

establish ownership of a legally protectable mark. Mary Kay also pleads that it imprints each product it produces with a code indicating the date on which it was produced. *Id.* ¶ 17. Mary Kay products have a shelf life of three years, and Mary Kay instructs its consultants "to rotate their inventory and to check the manufacture date for expired or soon-to-be expired products." *Id.* Further, Mary Kay ordered products from Anderson's eBay shop in June 2017 and, "[b]ased on Mary Kay's product coding system, the products ordered were all manufactured in either 2002 or 2003." *Id.* ¶¶ 28–29. Thus, Mary Kay pleaded Anderson's goods were materially different than those sold by Mary Kay consultants, and the Court finds Mary Kay's pleadings present a sufficient basis for its claims for relief. *Nishimatsu Constr.*, 515 F.2d at 1206.

    2. <u>Claims for Trademark Dilution</u>

Mary Kay asserts claims for trademark dilution under federal law and Texas state law. Doc. 1, Compl., ¶¶ 72, 82. The Texas statute is intended to be "substantially consistent with federal law," *US Risk Ins. Grp, Inc. v. U.S. Risk Mgmt., LLC*, 3:11-CV-2843-M-BN, 2013 WL 4504754, at *20 n.3 (N.D. Tex. Aug. 20, 2013), so the Court may jointly analyze Mary Kay's federal and state-law dilution claims. *See Tex. Outhouse Inc. v. Fresh Can LLC*, 266 F.Supp. 3d 928, 937 (S.D. Tex. 2017) (reaching the same outcome for the plaintiff's federal and Texas dilution claims because the Texas statute's "language mirrors the Lanham Act").

Under the Federal Trademark Dilution Revision Act, "the owner of a famous mark . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark." 15 U.S.C. § 1125(c)(1). Here, Mary Kay alleges dilution by tarnishment. Doc. 16, Mot. for Default J., 9. "Tarnishing occurs when a trademark

is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489–90 (5th Cir. 2004) (internal quotations omitted). "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine if a mark is famous, "a court may consider all relevant factors including the duration, extent, and geographic reach of advertising and publicity of the mark; the amount, volume, and geographic extent of sales of goods or services offered under the mark; the extent of actual recognition of the mark; and whether the mark was registered." *Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 643 (N.D. Tex. 2009).

First, the Court finds Mary Kay's well-pleaded facts establish its mark is famous. Mary Kay alleges that (1) its products are sold in over thirty-five countries, including the United States, Doc. 1. ¶ Compl., 7; (2) it adopted its trademark in 1963 and has used the mark continuously since that time, *id.* ¶ 10; (3) it has at least four trademarks registered with the USPTO, *id.*; and (4) it has expended substantial time, effort, money, and resources advertising and promoting its products under its trademarks, *id.* ¶ 66.

Next, the Court must determine if Mary Kay pleaded that Anderson began using Mary Kay's mark after it became famous. Mary Kay alleges that Anderson began using the mark "sometime prior to December 2016," *id.* 22, but it nowhere alleges when its mark became famous. Mary Kay states only that, "[a]fter the Mary Kay trademark became famous, [Anderson] willfully used the Mary Kay trademark in connection with the unauthorized and illegal sale of the products." *Id.* ¶¶ 69, 79.

Although this is a conclusory statement, the Court finds it nevertheless provided Anderson "with the requisite notice to satisfy Rule 8." *Wooten*, 788 F.3d at 497.

Finally, the Court must determine if Mary Kay pleaded that Anderson's use diluted Mary Kay's mark. Mary Kay alleges that "[b]ecause the products sold by [Anderson] are not, in fact, genuine and authentic Mary Kay products, [Anderson's] activities have caused and will continue to cause dilution of the distinctive quality of the Mary Kay trademark by lessening the public's ability to identify and distinguish genuine Mary Kay products." *Id.* ¶¶ 69, 79. As noted above, Mary Kay alleges that the products Anderson sold are not genuine or authentic because they do not come with the one-on-one consultation or money-back satisfaction guarantee and because at least some of the products she sold were expired. *Id.* ¶¶ 29, 34, 35. Because the mark owner must demonstrate its trademark is linked to products of shoddy quality, the only plausible allegation Mary Kay makes is that Anderson's sale of expired products diluted Mary Kay's mark. Although Mary Kay could have supported its claim with stronger allegations of tarnishment, the Court finds its "allegations are not so vague that [Anderson] lacked notice of the contours of [Mary Kay's] claim." *Wooten*, 788 F.3d at 497. Thus, the Court finds that default judgment is appropriate on Mary Kay's dilution claims.

### 3. False Advertising Claim

To state a claim for false advertising, a plaintiff must demonstrate:

> (1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result.

*Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (internal

alterations omitted).

Mary Kay alleges that Anderson used the Mary Kay trademark on her eBay storefront "in connection with the unauthorized sale and advertising of [Mary Kay] products," and that her use of the Mary Kay trademark "is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the products . . . are genuine and authentic products, and originate from, or are sponsored by, authorized by, approved by, or otherwise connected with Mary Kay." Doc. 1, Compl., ¶ 52. Mary Kay claims Anderson's deceptive use of the Mary Kay trademark is likely to influence consumers' purchasing decisions because consumers are likely to believe Anderson's products "come with the quality control and other benefits associated with authentic Mary Kay products," and this deception caused Mary Kay to lose sales and goodwill associated with its products. *Id*. ¶¶ 53–54. Because the Court finds these allegations sufficient to provide Anderson notice of Mary Kay's claim, default judgment is appropriate on Mary Kay's false advertising claim.

### 4.   Claims for Tortious Interference with Business Contracts

"Under Texas law, a plaintiff must prove four elements to sustain a claim of tortious interference: (1) that a contract subject to interference exists, (2) that the alleged act of interference was willful and intentional, (3) that the willful and intentional act proximately caused damage, and (4) that actual damage or loss occurred." *Mary Kay v. Weber*, 601 F.Supp. 2d 839, 861 (N.D. Tex. 2009) ("*Weber I*") (citing *ACS Inv'rs Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)). To demonstrate that the defendant's conduct was "willful and intentional," the plaintiff must show that the defendant exerted some influence over the breaching party; it is insufficient to show that the defendant was merely a "willing participant in the [contracting party's] decision[] [to] breach [its] contracts." *See Weber I*, 601 F. Supp. 2d at 863 (finding Mary Kay failed to show willful and

intentional interference because defendants had only "advertise[d] their willingness to buy Mary Kay products to anyone who [saw] their website").

Here, Mary Kay alleges that Anderson knew Mary Kay had contracts with its consultants that prohibited consultants from selling Mary Kay products online and to resellers because it informed Anderson this was the case in the cease-and-desist letters it sent in 2016 and 2017. Doc. 1, Compl., ¶ 106. Mary Kay claims that Anderson interfered with the consultants' contracts by reselling Mary Kay products online and that she did so wilfully and intentionally because, "[o]n information and belief," she "encouraged" Mary Kay consultants to breach their contracts. *Id.* ¶¶ 107–08. Regarding damages, Mary Kay makes only the conclusory statement that "[Anderson's] actions have caused injury to Mary Kay," *id.* ¶ 109, although the Court could infer the damages Mary Kay alleges elsewhere in its complaint—"loss of sales for products and a loss of goodwill associated with its products," *e.g., id.* ¶ 46—apply to this claim as well.

Similarly to Mary Kay's claims for trademark dilution, Mary Kay could have supported its claim with a more robust allegation than simply its belief that Anderson encouraged Mary Kay consultants to breach their contracts. But as was the case for Mary Kay's trademark dilution claims, the Court finds that Mary Kay's allegations satisfy "the low threshold of Rule 8." *Wooten*, 788 F.3d at 497. Thus, default judgment is appropriate on Mary Kay's tortious interference claim.

C.     *Injunctive Relief*

Mary Kay seeks only injunctive relief. Doc. 16, Mot. for Default J., 13. Mary Kay sought a similar injunction in its complaint. *See* Fed. R. Civ. P. 54(c) (noting that "[a] default judgment must not differ in kind from . . . what is demanded in the pleadings"). Although Courts have power to grant injunctions sought in motions for default judgment, *Pathway Senior Living LLC,* 2016 WL

1059536, at * 4, the plaintiff must still demonstrate it is entitled to a permanent injunction in its particular case, *id*. The Court will first address whether Mary Kay is entitled to an injunction, and if so, whether the scope of the injunction it seeks is appropriate.

1.    Right to Relief

A party seeking a permanent injunction must demonstrate:

 (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013).

 "When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm. . . . The injury lies in the fact that the plaintiff no longer can control its own reputation and goodwill." *Joy Mfg. Co. v. CGM Valve & Gauge Co. Inc.*, 730 F. Supp. 1387, 1394 (S.D. Tex. 1989); *Hawkins Pro-Cuts*, 1997 WL 446458, at *7. Because the harm lies in damage to the trademark owner's reputation and inability to control the quality of services or products by the unauthorized user, the harm is "difficult to pinpoint as compensable damages." *Hawkins Pro-Cuts, Inc.*, 1997 WL 446458, at *7. When balancing the harms to the plaintiff and defendant, "courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." *7-Eleven Inc. v. P.R.-7 Inc.*, No.3:08-CV-0140B, 2009 WL 4723199, at *10 (N.D. Tex. Dec. 9, 2009). Finally, an injunction would be in the public interest because the Lanham Act is intended "'to protect the ability of consumers to distinguish among competing products.'" *Weber II*, 661 F. Supp. 2d at 640 (quoting *Park N' Fly, Inc. v. Dollar Park and Fly*, 469 U.S. 189, 198 (1985)). Thus,

because Mary Kay's well-pleaded allegations establish a likelihood of confusion exists between its products and those sold by Anderson, Mary Kay has demonstrated irreparable harm and that money damages are inadequate compensation. Mary Kay has also demonstrated its harm outweighs the harm Anderson would suffer if forced to close her business and that it is in the public's best interest to issue an injunction. Thus, the Court finds Mary Kay is entitled to a permanent injunction.

2.     Scope of Injunction

Mary Kay seeks to enjoin Anderson from

(1) any use of the Mary Kay Registered Trademarks with respect to its brand and products; (2) advertising, selling, or facilitating the advertisement or sale of, via the Internet or otherwise, any goods or products bearing the Mary Kay registered trademarks; (3) using the Mary Kay Registered Trademarks in any manner, including advertising on the Internet; (4) importing, exporting, manufacturing, producing, distributing, circulating, shipping, selling, offering to sell, advertising, promoting, or displaying any goods or products bearing any of the Mary Kay Registered Trademarks; and (5) purchasing or acquiring products bearing any of the Mary Kay Registered Trademarks for the purpose of resale.

Doc. 16, Mot. for Default J., 14.

Mary Kay urges the Court to adopt the broad terms it seeks because "[i]n fashioning the scope of a permanent injunction, the court may 'proscribe activities that, standing alone, would have been unassailable.'" *Id*. at 13 (quoting *Chevron Chem. Co. v. Voluntary Purchasing Grps. Inc*., 659 F.2d 695, 705 (5th Cir. Unit A 1981)). But even keeping in mind that "[a] competitive business, once convicted of unfair competition . . . should thereafter be required to keep a safe distance away from the margin line even if that requirement involves a handicap as compared to those who have not disqualified themselves," *Chevron Chem*., 659 F.2d at 705, the Court nonetheless finds that the terms Mary Kay seeks are too broad.

An "injunction must 'state its terms specifically' and 'describe in reasonable detail' the

conduct restrained." *Daniels Health Sciences L.L.C. v. Vascular Health Sciences L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (quoting Fed. R. Civ. P. 65(d)). "[T]he command for specificity is not absolute; it merely requires injunctions to be 'framed so that those enjoined will know what conduct the court has prohibited.'" *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) (quoting *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. Nov. 1981)). The actions Mary Kay seeks to enjoin fall outside of these requirements. For example, Mary Kay seeks to enjoin Anderson from "any use of the Mary Kay Registered Trademark with respect to its brand and products," Doc. 16, Mot. for Default J., 14, but the Lanham Act does not proscribe all use of another's trademark. A user may, for example, "use another's trademark . . . to the extent it is necessary to identify a product as having been manufactured by the mark owner." *Weber II*, 661 F. Supp. 2d at 646 (finding Mary Kay's request that "defendants should not be allowed to use Mary Kay's trademarks in any advertising, newsletters, or coupons except to identify the name of the products for sale" too broad because the defendants could not be restricted to using the Mary Kay mark only directly before the name of the product advertised).[3] Thus, the Court **ORDERS** Mary Kay to submit a proposed injunction with revised terms no later than **June 15, 2018.**

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mary Kay's motion for default judgment. Doc. 16, and **ORDERS** Mary Kay to submit a proposed injunction with revised terms no later than **June 15, 2018.**

---

[3]The Court notes that the term of the injunction the *Weber II* court found too broad was still significantly narrower than the terms of the injunction Mary Kay seeks in this case.

SO ORDERED.

SIGNED: May 16, 2018.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE